IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

WESCO INSURANCE COMPANY                                    PLAINTIFF

v.                                              CAUSE NO. 1:20CV305-LG-RPM

EDWARD EUGENE RICH AND
EDWARD SHAYNE RICH as
Wrongful Death Beneficiaries of
Ladonna C. Rich, Deceased;
YASSER SARDINAS ARMESTO;
DKY EXPRESS, LLC; SAM
FREIGHT SOLUTIONS, LLC;
DAIRON M. LOPEZ; DAIMI
RAMOS; SAMUEL RAMOS
GONZALEZ; and PRIME
PROPERTY & CASUALTY
INSURANCE, INC.                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING
## PRIME'S MOTION FOR JUDGMENT ON THE PLEADINGS

**BEFORE THE COURT** are the [25] Motion for Judgment on the Pleadings

or Alternatively Motion for Summary Judgment filed by Prime Property & Casualty

Insurance, Inc., the [35] Motion to Defer Ruling on Motion for Judgment on the

Pleadings or for Summary Judgment filed by Wesco Insurance Company, and the

[41] Motion to Stay Proceedings Pending Resolution of Motion filed by Prime.  The

parties have fully briefed the Motions.  After reviewing the submissions of the

parties, the record in this matter, and the applicable law, the Court finds that

Prime's Motion for Judgment on the Pleadings should be granted.  Wesco's Motion

to Defer Ruling is denied, and Prime's Motion to Stay is denied as moot.

## BACKGROUND

This declaratory judgment action arose out of a July 28, 2018, automobile accident in which a Nissan Sentra driven by Ladonna C. Rich was struck by 2010 Freightliner driven by Dairon Lopez on Interstate 10 in Jackson County, Mississippi.  (Compl. at 4, ECF No. 1).  Rich was tragically killed in the accident. (*Id.*)  The Freightliner was owned by Yasser Sardinas Armesto, who is a member of DKY Express, LLC.  (*Id.*).  At the time of the accident, Armesto had allegedly leased the Freightliner to Sam Freight Solutions, LLC.  (*Id.* at 5).  Wesco had issued a Commercial Motor Carrier insurance policy to Sam Freight, and Prime had issued Commercial Auto Insurance Policy to DKY Express.  (Compl. at 4, ECF No. 1).[1]  The Freightliner was not listed as a covered automobile on either policy.  (Compl., Exs. A & C, ECF No. 1-1 & 1-2)  Both policies contain a Form MCS-90 Endorsement, which provides that the insurer agrees to pay

> any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each vehicle is specifically described in the policy . . . .

(Prime's Mot., Ex. G at 32, ECF No. 25-7; Compl., Ex. C at 55, ECF No. 1-3).  Each Endorsement also requires the insured to reimburse the insurer for any payment that the insurer "would not have been obligated to make under the provisions of the policy except for the agreement contained in the endorsement."  (*Id.*).

---

[1] Both the Wesco and Prime policies were attached as exhibits to the Complaint.

Ladonna Rich's surviving husband and son, Edward Eugene Rich and Edward Shayne Rich, sued Armesto, DKY Express, Sam Freight, Lopez, and unknown defendants A, B, and C in the Circuit Court of Jackson County, Mississippi.  (Compl. at 4, ECF No. 1).  Sam Freight's insurer, Wesco, filed the present Complaint for Declaratory Judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201.  It seeks the following declarations:

    a.  The Wesco policy does not provide coverage for the subject accident.
    b.  The Prime policy does provide coverage for the subject accident.
    c.  If the Prime policy does not provide such coverage and the Prime MCS 90 does not apply and Wesco MCS 90 does apply, then Wesco is entitled to a judgment against Samuel Ramos Gonzalez as the owner of Sam Freight and Sam Freight Solutions for all amounts Wesco must pay the Plaintiffs in the [state court lawsuit].

(*Id.* at 7).  Prime filed the present Motion for Judgment on the Pleadings, or in the alternative for Summary Judgment.  Wesco has filed a Motion asking the Court to defer its ruling on the Motion so that discovery can be conducted, while Prime has filed a Motion seeking a stay of proceedings pending a ruling on its Motion.

## DISCUSSION

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.  The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  The plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (internal citations and quotation marks omitted).

As explained previously, Prime seeks summary judgment in the event that it is not entitled to a judgment on the pleadings. The Court has not reviewed any evidence or other information outside of the pleadings and exhibits attached to the Complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto."). It is not necessary for the Court to convert Prime's Motion to a Motion for Summary Judgment.

## I. WHETHER WESCO HAS STANDING TO FILE A DECLARATORY JUDGMENT ACTION AGAINST PRIME

Since standing has jurisdictional implications, the Court must first consider Prime's argument that Wesco does not have standing to file a declaratory judgment action concerning coverage under Prime's policy. Standing under the Declaratory Judgment Act exists where there is an "actual controversy." 28 U.S.C. § 2201(a); *see also Hosein v. Gonzalez*, 452 F.3d 401, 403 (5th Cir. 2006) (explaining that the Fifth Circuit "interprets the § 2201 'case of actual controversy' requirement to be coterminous with Article III's 'case or controversy' requirement").

Wesco's declaratory judgment action raises the issue of whether Lopez was hauling goods on behalf of Wesco's insured, Sam Freight, or Prime's insured, DKY Express, or both. Therefore, Wesco has alleged an "actual controversy" under the Declaratory Judgment Act.

Prime also argues that Wesco does not have standing to file a direct action against Prime under Mississippi law.  Traditionally, Mississippi barred direct actions filed by injured parties against liability insurers.  *Poindexter v. S. United Fire Ins. Co.*, 838 So. 2d 964, 967 (Miss. 2003).  In 2000, the Mississippi rule concerning declaratory judgment actions, Miss. R. Civ. P. 57, was amended to provide, "Where an insurer has denied or indicated that it may deny that a contract covers a party's claim against an insured, that party may seek a declaratory judgment construing the contract to cover the claim."  Miss. R. Civ. P. 57(b)(2).

Wesco responds that this lawsuit is governed by federal law, not state law.  In diversity cases, federal courts apply state substantive law and federal procedural rules.  *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021).  The Fifth Circuit has cited Miss. R. Civ. P. 57(b)(2) for the proposition that "Mississippi law prohibits direct actions by third parties against insurance companies, except where the third party brings a declaratory action against an insurer who has denied coverage or has indicated that it may deny coverage."  *Walker v. FFVA Mut. Ins. Co.*, 603 F. App'x 324, 325 (5th Cir. 2015).  The court in *Walker* affirmed the district court's decision on that basis; thus, it appears that the Fifth Circuit would consider state law policies concerning direct actions to be substantive in nature.  *See id.*  This court usually applies state law to determine whether a lawsuit is a barred direct action.  *See, e.g., Sampson v. Miss. Valley Silica Co.*, 268 F. Supp. 3d 918, 923 (S.D. Miss. 2017); *but see Wesco Ins. Co. v. State Auto Prop. & Cas. Ins. Co.*, No. 3:20-CV-422-HTW-LGI, 2021 WL 3891084, at *3 (S.D. Miss. Aug. 31, 2021) (holding that

Miss. R. Civ. P. 57 should not be considered because *Erie R.R. Co. v. Tompkins*, 304

U.S. 64, 78 (1938), required the Court to apply federal law to issues of ripeness and

standing).

Nevertheless, the Court finds that the present action is not a "direct action"

under Mississippi law.  This is not a case in which a tort victim has sued an insurer;

rather, one insurer has sued another insurer in an effort to determine which

company would be responsible for indemnification in the underlying state court

action.  The policies behind Mississippi's treatment of direct actions supports this

conclusion:

> Mississippi's prohibition of direct actions was consistent with its long-
> standing policy that a jury should not consider the existence of
> insurance when considering whether an insured is liable in tort.  The
> policy was memorialized in statutory law in former Miss. Code Ann. §
> 19-7-8.  The concern is that introduction of insurance into the tort
> action will be prejudicial because a jury may be more likely to find the
> insured liable when the jury is aware that the insured has insurance to
> cover such liability.  Liability insurance should cover the tort liability
> of the insured.  Insurance should not be used as a basis to establish
> such tort liability.  An insured carries liability insurance in the event it
> is found liable in tort.  It should not be found liable in tort merely
> because it carries liability insurance.

Jeffrey Jackson & D. Jason Childress, *Mississippi Insurance Law & Practice* § 19:1

(July 2021).  These policy issues that formed the basis for Mississippi's stance on

direct actions are not at play in the present case.  *See Evanston Ins. Co. v. Jimco,*

*Inc.*, 844 F.2d 1185, 1188-89 (5th Cir. 1988) (noting that a declaratory judgment

action filed by an insurer is not a direct action "regardless of the defendant"); *see*

*also Progressive Express Ins. Co. v. Overdrive Specialized, Inc.*, No. 3:14cv138-

MCR/EMT, 2014 WL 11512202, at *3 (N.D. Fla. Dec. 24, 2014) (explaining why

declaratory judgment actions filed by insurers are not barred by Florida's direct action statute).  The Court finds that this case is not subject to Mississippi law prohibiting direct actions.  Wesco is permitted to seek a declaratory judgment as to coverage under the policy Prime issued to DKY Express.  The Court will separately address Wesco's standing to seek a declaration under the MCS-90 endorsement *infra*.

## II.  COVERAGE UNDER PRIME'S POLICY

## A.  CHOICE OF LAW

According to Wesco's Complaint, Prime's insured, DKY Express, is a Florida LLC, and its members and managers are residents of Florida.  Prime is a Utah corporation with its principal place of business in Sandy, Utah.  Both named drivers on the policy are listed as Florida residents.   In its Motion, Prime notes that DKY Express's policy was issued and delivered in Florida, but Prime relies on Mississippi law in its Motion.

"Choice of law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation."  *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006).  The Florida Supreme Court has provided the following overview of Florida law as to interpretation of insurance policies:

> In interpreting an insurance contract, we are bound by the plain meaning of the contract's text.  If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written.

*State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569-70 (Fla. 2011)

(internal quotation marks and citations omitted).  "Generally, under Mississippi

law, when the words of an insurance policy are plain and unambiguous, the court

will afford them their plain, ordinary meaning and will apply them as written."

*Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998).  There is no apparent

conflict between Florida and Mississippi law in this case, so there is no need to

further discuss the appropriate choice of law.

**B. POLICY LANGUAGE**

Prime argues that there is no coverage under Prime's policy for the 2010

Freightliner that was involved in the accident.  The policy lists two scheduled

drivers — Yasser Armesto and Jose A. Quintana.  (Prime's Mot., Ex. 7, ECF No. 25-

7).  The policy provides:

> We will pay all sums an "insured" must legally pay as damages
> because of "bodily injury" or "property damage" to which this insurance
> applies, caused by an "accident" and resulting from the ownership,
> maintenance or use of a covered "auto".

(*Id.* at 3).  Under Section I -- Covered Autos, the policy states:

> Item Two of the Declarations shows the "autos" that are covered
> "autos" for each of your coverages.  The following numerical symbols
> describe the "autos" that may be covered "autos."  The symbols entered
> next to a coverage on the Declarations designate the only "autos" that
> are covered "autos."

(*Id.* at 2).  The number "7" is listed next to Item 2 on the Declarations.  The policy

further provides:

> [I]f Symbol 7 is entered next to a coverage in Item Two of the
> Declarations, an "auto" you acquire will be a covered "auto" for that
> coverage only if:

> a.  We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and
> b.  You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

(*Id.* at 3).  The Description of Covered Auto Designation Symbols explains that "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." (*Id.*).  A 2005 Freightliner tractor and a 2014 utility trailer are listed as "Specifically Described Autos" in Item 3.  (*Id.* at ACA-99-04).  Therefore, all of the relevant coverage under the policy is provided only to a "covered auto," and the 2010 Freightliner at issue is not listed as a "covered auto" or otherwise included in the definition of "covered auto."

In response to Prime's Motion, Wesco argues that Prime's Motion is premature, and it seeks permission to conduct discovery pursuant to Fed. R. Civ. 56(d).  Wesco advances the following argument:

> Samuel Ramos was listed as the owner of Sam Freight at the time of the accident.  Even though Lopez claims to be working for Sam Freight at the time of the accident, the owner of the Freightliner that Lopez was driving, Yasser, was a member of DKY Express LLC at the time of the accident in July 2018.  The owner of DKY, Daimi Ramos[,] and Yasser may be married.  Additionally, it is not clear who/which company owned, operated, or retained any right to control over the trailer that was attached to the Freightliner at the time of the fatal collision, where the trailer went following the accident, or who insured the trailer.  In the underlying case, DKY provided Sam Freight with a Vehicle Schedule History to the policy which is not included in the certified version.  The record of annual inspection connects the 2010 Freightliner involved in this fatal collision to Armesto Sardinas dba DKY on September 19, 2017[,] months before the accident occurred.

(Pl.'s Mem. at 12, ECF No. 31) (footnotes omitted).  Wesco's argument regarding the Vehicle Schedule History concerns a 2005 Freightliner tractor that was once insured under the policy, but this tractor was deleted from the policy on April 13, 2018, prior to the accident at issue.  (Pl.'s Resp., Ex. F at 51, ECF No. 30-6).  Wesco also argues that there appears to be a connection between the member/owner of DKY Express and several other businesses, including Sam Freight.  It claims that there is a genuine issue of material fact regarding whether Sam Freight and DKY Express "were connected and essentially the same company at the time of the accident."  (*Id.* at 14).

Wesco has not explained how any of these alleged issues could transform the 2010 Freightliner into a "covered auto" under Prime's policy.  Wesco also has not discussed the effects of the policy language or explained how coverage could be provided under the policy to a vehicle that is plainly not a "covered auto."  Prime is entitled to judgment on the pleadings as to coverage under its policy issued to DKY Express because the 2010 Freightliner was not a "covered auto" under the policy.  This determination does not impact analysis under the MCS-90 endorsement, which is discussed *infra*.

## III.  COVERAGE UNDER PRIME'S MCS-90 ENDORSEMENT

The question of whether the MCS-90 endorsement provides coverage is governed by federal law.  *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010).  Wesco claims that the MCS-90 Endorsement in Prime's policy provides coverage for the accident at issue and precludes coverage under Wesco's MCS-90

endorsement.  However, the Fifth Circuit has held that the MCS-90 "is not implicated for the purpose of resolving disputes among multiple insurers over which insurer should bear the ultimate financial burden of the loss." *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 611 (5th Cir. 1989), *modified on other grounds*, 901 F.2d 45 (5th Cir. 1990); *see also John Deere Ins. Co. v. Truckin' U.S.A.*, 122 F.3d 270, 275 (5th Cir. 1997).  Therefore, Wesco's claims pertaining to Prime's MCS-90 Endorsement must be dismissed.  This dismissal does not prevent the injured parties from seeking coverage under this endorsement, but Wesco is prohibited from seeking such a determination under Fifth Circuit precedent.

Wesco has filed a Rule 56(d) Motion seeking permission to conduct discovery "to illuminate how the two insureds of Wesco and Prime (Sam Freight and DKY) were operating and whether they were in fact in a joint venture or operating in such a manner as to trigger the MCS[-]90 endorsements of both the Prime and Wesco policies." (Wesco's Mem. at 2, ECF No. 36).  First, Fed. R. Civ. P. 56(d) pertains to motions for summary judgment, and this Court has made its findings based on the pleadings pursuant to Fed. R. Civ. P. 12(c).  In addition, the Rule 56(d) Motion must be denied since Wesco does not have standing to seek a declaration regarding coverage under Prime's MCS-90; that right may be available to Ladonna Rich's survivors.

The Court further notes that coverage under either insurer's MCS-90 endorsement is dependent "upon final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of

motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980." (Prime's Mot., Ex. G at 32, ECF No. 25-7; Compl., Ex. C at 55, ECF No. 1-3). As a result, coverage under this endorsement hinges upon the findings made in the underlying state court negligence action against Sam Freight and DKY Express. *See Canal Ins. Co. v. XMEX Transp., LLC*, 126 F. Supp. 3d 820, 828 (W.D. Tex. 2015) (holding that courts "look[ ] first to the 'facts proven in the underlying suit' to determine [the insurer's] obligations under the MCS-90 endorsement" because an insurer's duty under the MCS-90 endorsement is "determined by all the facts and circumstances that result in the insured's potential liability").

## CONCLUSION

For the foregoing reasons, the Court finds that Prime is entitled to judgment on the pleadings.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [25] Motion for Judgment on the Pleadings filed by Prime Property & Casualty Insurance, Inc. is **GRANTED** and Prime's alternative [25] Motion for Summary Judgment is **MOOT**. Prime Insurance Company is hereby **DISMISSED WITH PREJUDICE** from this lawsuit.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [35] Motion to Defer Ruling on Motion for Judgment on the Pleadings or for Summary Judgment filed by Wesco Insurance Company is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [41] Motion to

Stay Proceedings Pending Resolution of Motion filed by Prime is **MOOT**.

**SO ORDERED AND ADJUDGED** this the 2nd day of December, 2021.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE